## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **REGIONAL MEDICAL TRANSPORT,** | : | **CIVIL ACTION** |
| **INC., ROBERT M.  SKLAR, AND** | : | |
| **SCOTT C.  DONOHUE** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HIGHMARK, INC., D/B/A** | : | **NO.  04-1969** |
| **HGS ADMINISTRATORS,** | : | |
| **MARGERY L.  GLOVER,** | : | |
| **LAURA L.  MINTER, MIRANDA** | : | |
| **SHAW, STEPHEN M.  WALKER, AND** | : | |
| **KIMBERLY G.  WARREN** | : | |
| **Defendants.** | : | |

_____

**DuBois, J.**                                                                                          **April 2, 2008**

## MEMORANDUM

### I.    INTRODUCTION

On April 7, 2004, plaintiffs Regional Medical Transport, Inc. ("RMT"), and Robert M.

Sklar and Scott C. Donohue, both employees of RMT ("plaintiffs"), filed an action against

Highmark, Inc. d/b/a HGS Administrators ("HGSA"), and HGSA employees Margery L. Glover,

Laura L. Minter, Miranda Shaw, Stephen M. Walker, and Kimberly G. Warren ("defendants") in

the Court of Common Pleas of Philadelphia, Pennsylvania.  Defendants removed the case to this

Court on May 6, 2004, pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.

In their Complaint, plaintiffs assert claims for tortious interference with contractual

relations, misfeasance, and negligent supervision.  Presently before the Court are Plaintiffs'

1

Motion to Remand and Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.  For the reasons set forth below, Plaintiffs' Motion to Remand is denied and Defendants' Motion to Dismiss is granted.

## II.    FACTS

The following facts are taken from the Complaint or are matters of public record, and are presented in the light most favorable to plaintiff.[1]

### A.    Overview of Medicare Program

Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 et seq., commonly known as the Medicare Act, establishes a federally subsidized health insurance program to be administered by the Secretary of the Department of Health and Human Services (the "Secretary").  Heckler v. Ringer, 466 U.S. 602, 605 (1984).  Part A of the Act, 42 U.S.C. § 1395c et seq., provides insurance for the cost of hospital and related post-hospital services.  Id. Part B of the Act, which encompasses the portions of the Medicare program at issue in this case, establishes a voluntary program of supplemental medical insurance covering expenses not covered by the Part A program, such as reasonable charges for physicians' services, medical supplies, and laboratory tests.  42 U.S.C. §§ 1395j-1395w-4.

The Secretary delegates responsibility for administering the Medicare program to the Centers for Medicaid and Medicare Services ("CMS").  CMS, in turn, delegates the administration of benefits pursuant to 42 U.S.C. § 1395u, which states that services under Part B

---

[1] Generally, the court may not consider documents outside of the pleadings when ruling on a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a court may consider public documents and prior judicial proceedings without converting a motion to dismiss into one for summary judgment.  In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 292-93 (3d Cir. 1999).

of the Act shall be administered through contracts with private insurance contractors.  The

Secretary is authorized to indemnify these private contractors, called "Medicare carriers," for

their actions in administering the Medicare program on behalf of CMS.  42 C.F.R. § 421.5(b).

Medicare carriers are bound by a detailed set of rules and regulations set out in the

Medicare Act, CMS regulations, and other instructions issued by CMS, including the Medicare

Carriers Manual and Program Integrity Manual.  In addition to processing payments, Medicare

carriers are charged with screening for fraud and initiating review or suspending payments when

they have reliable evidence of wrongdoing.  See, e.g., 42 U.S.C. § 1395ddd; 42 C.F.R. § 405.371.

A dissatisfied Medicare provider seeking reimbursement from CMS may request review

of a Medicare carrier's initial determination.  42 C.F.R. § 405.807.  After exhausting all appeals

with the Medicare carrier, a claimant may, where the regulations permit, seek administrative

review through CMS.  42 C.F.R. §§ 405.855-56.  After exhausting all administrative appeals, a

claimant who meets specified amount-in-controversy requirements may seek review in federal

court.  42 U.S.C. §§ 405(g), 1395ff; 42 C.F.R. § 405.857.

### B.    Plaintiffs' Allegations

On April 7, 2004, plaintiffs filed a three-count Complaint against defendants in the Court

of Common Pleas of Philadelphia.  From at least January 1, 2000, through the time that plaintiffs

filed the Complaint, RMT provided ambulance services to Pennsylvania residents.  (Compl.

¶ 12.)  During this time, HGSA contracted with CMS to process claims from Medicare Part B

providers in Pennsylvania.  (Id. ¶¶ 10, 11.)  In its role as a regional Medicare carrier, HGSA

processed claims submitted by RMT for services to participants in Part B of the Medicare

program.  (Id. ¶ 13.)  HGSA was required to administer these claims in conformity with the

applicable federal regulations, the Medicare Carriers Manual, and other bulletins and directives issued by CMS.  (Id. ¶ 14.)

Plaintiffs allege that HGSA failed to follow Medicare regulations in administering claims submitted by RMT.  First, plaintiffs allege that HGSA failed to provide timely notice of the results of an overpayment investigation, in violation of the duty imposed by 42 C.F.R. § 405.372(c).  (Id. ¶¶ 20-23, 26.)  42 C.F.R. § 405.372(c) provides, in relevant part, that "[a]s soon as the [overpayment] determination is made, the intermediary or carrier informs the provider . . . [of] the determination."

Second, plaintiffs allege that HGSA acted improperly in administering RMT's Medicare provider number, a prerequisite for submitting Medicare claims.  (Id. ¶¶ 30-43.)  Specifically, plaintiffs allege that HGSA failed to provide RMT timely notice of a provider number suspension, notify RMT of its right to appeal, or promptly reinstate RMT's provider number when its appeal was successful.  (Id. ¶¶ 34, 37, 40.)  Plaintiffs also allege that HGSA improperly compelled RMT to complete Medicare form 855B.  (Id. ¶ 39.)

Third, plaintiffs allege that during its prepayment review of claims submitted by RMT, HGSA sought medical records from third-party healthcare providers for Medicare beneficiaries transported by RMT.  (Id. ¶¶ 44, 46.)  Plaintiffs allege that HGSA improperly withheld payments because of the failure of these third-party providers to produce the requested records.  (Id. ¶¶ 46-49.)

Fourth, plaintiffs allege that defendants misconstrued the scope of an Order from this Court in a related case filed by the United States against RMT, Ronald Sklar, and Scott Donohue alleging violations of the False Claims Act, common law fraud, and unjust enrichment.  (Id.

4

¶¶ 62-63.)  Plaintiffs allege that because the case filed by the United States was pending, defendants improperly refused all communication with RMT, including communication concerning Medicare Part B claims not the subject of the United States' lawsuit.  (Id. ¶¶ 65-69.)

Based on these facts, plaintiffs assert three common law tort claims.  First, plaintiffs assert a claim for tortious interference with contractual relations, alleging that defendants "made RMT's performance of its contracts [with Medicare beneficiaries] more expensive and burdensome."  (Id. ¶¶ 70-77.)  Second, plaintiffs assert a claim against HGSA for misfeasance, alleging that RMT was a third-party beneficiary of HGSA's contract with CMS, and that HGSA's violations of the Medicare regulations underlying that contract caused RMT harm.  (Id. ¶¶ 78-84.)  Third, plaintiffs assert a claim for negligent supervision, alleging that the individual defendants failed to properly supervise their employees, allowing them to engage in the conduct giving rise to the first two claims.  (Id. ¶¶ 85-97.)  With respect to damages, plaintiffs claim that defendants' misconduct forced them to borrow and expend substantial sums of money and adversely affected RMT's creditworthiness.  (Id. ¶¶ 91-96.)

## III.  PROCEDURAL HISTORY

The instant case is one of three related cases currently pending before this Court; it was the second of the three cases to be filed.  The first of the cases, United States v. Regional Medical Transport, et al., Civil Action No. 01-5227, was filed by the United States on October 15, 2001. In that case, the United States alleges that RMT, Robert Sklar, and Scott Donohue, the plaintiffs in this matter, filed fraudulent claims for Medicare reimbursement.  The Government seeks treble damages and civil penalties under the False Claims Act, and damages under theories of common law fraud, unjust enrichment, and fraudulent misrepresentation.

5

The third case, <u>Regional Medical Transport, Inc. v. Leavitt</u>, Civil Action No. 05-5670, was filed on October 25, 2005.  That case involves an appeal by RMT of a final order by the Secretary denying payment for services under Part B of the Medicare program.  RMT seeks payment of $120,961.31, plus interest and costs of suit, for claims that RMT alleges were improperly denied by the Administrative Law Judge ("ALJ").

By Order dated October 28, 2002, the Court stayed all proceedings in Civil Action No. 01-5227 and transferred the case to the Civil Suspense file.  The Court did so because of the United States' ongoing criminal investigation into the conduct of RMT, Robert Sklar, and Scott Donohue.  By Order dated October 12, 2004, the Court also stayed proceedings in this case and transferred it to the Civil Suspense file because of the relationship of this case to the government's ongoing criminal investigation.

By letter dated March 2, 2005, the government informed the Court that the United States Attorney's office for the Eastern District of Pennsylvania had declined prosecution of RMT, Robert Sklar, and Scott Donohue.  Thereafter, by Order dated March 3, 2005, the Court directed that this case and Civil Action No. 01-5227 be transferred from the Civil Suspense file to the Court's active docket.  The Court further ordered the parties to report to the Court on or before April 8, 2005 on the status of their ongoing settlement discussions.

The parties continued their settlement discussions concerning this case and Civil Action No. 01-5227.  The settlement discussions were expanded to include Civil Action No. 05-5670 when that case was filed on October 25, 2005.

The parties regularly reported to the Court on the status of their settlement discussions and requested that they be granted additional time to continue those discussions.  Finally, by letter dated July 24, 2007, counsel for the United States, speaking on behalf of all parties,

notified the Court that the parties had reached an impasse in their settlement discussions.  The

letter further stated that the parties believed that a ruling from the Court on the pending motions

in this matter would facilitate a settlement of the three cases.

## IV.    PLAINTIFF'S MOTION TO REMAND

On May 6, 2004, defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1446(a)

and 28 U.S.C. § 1442(a)(1), the federal officer removal statute.  On June 4, 2004, plaintiffs filed

a Motion to Remand the case to the Court of Common Pleas.  Defendants filed an Opposition to

Plaintiffs' Motion to Remand on June 18, 2004.

In their Notice of Removal, defendants allege that removal was proper under the federal

officer removal statute, because defendants acted under the direction of the Secretary in their role

as Medicare carriers.  In their Motion to Remand, plaintiffs argue that this Court lacks subject

matter jurisdiction in that removal of the case was improper under 28 U.S.C. § 1442(a)(1), citing

three reasons: (1) HGSA is not a "person" who may seek removal under 28 U.S.C. § 1442(a)(1);

(2) defendants have not established that they were acting at the direction of a federal officer or

agency; and (3) defendants have not raised a federal defense to plaintiffs' claims or demonstrated

a causal nexus between plaintiffs' claims and the acts defendants performed under color of

federal office.  For the reasons set forth below, Plaintiffs' Motion to Remand is denied.

### A.    Legal Standard

28 U.S.C. § 1447(c) states that "[i]f at any time before final judgment it appears that the

district court lacks subject matter jurisdiction, the case shall be remanded."  "[I]t remains the

defendant's burden to show the existence and continuance of federal jurisdiction" in removed

cases.  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

7

In deciding a removal motion, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed," and "must assume as true all factual allegations of the complaint."  Id.

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits persons acting on behalf of the United States in the course of their employment to remove actions filed in state court to federal court.  The statute provides, in relevant part, that:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

An action may be properly removed under 28 U.S.C. § 1442(a)(1) if a defendant who is not a federal agency or officer demonstrates that: "(1) [the defendant] is a 'person' within the meaning of the statute; 2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) [the defendant] raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998) (citing Mesa v. California, 489 U.S. 121, 129 (1989); Willingham v. Morgan, 395 U.S. 402, 409 (1969)).

### B.    Definition of "Person" Under the Statute

Plaintiffs argue that because HGSA is a corporation, it is not a "person" for purposes of the federal officer removal statute.  (Pls.' Mot. 3.)  In support of their position, plaintiffs cite Krangel v. Crown, 791 F. Supp. 1436 (S.D. Ca. 1992), which held that the General Dynamics

Corporation could not qualify as a person under 28 U.S.C. § 1442(a)(1).  While the Third Circuit has not squarely addressed this question, the overwhelming majority of federal courts have held that corporations qualify as persons under the federal officer removal statute.  See, e.g., In re Methyl Tertiary Butyl Ether Products Liability Litigation, 488 F.3d 112, 124 (2d Cir. 2007) (internal citations omitted) (hereinafter "MTBE"); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998); Ferguson v. Lorillard Tobacco Co., Inc., 475 F. Supp. 2d 725, 729 (N.D. Ohio 2007); Arness v. Boeing N. Am., Inc., 997 F. Supp. 1268, 1272 (C.D. Cal. 1998); Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996).

In Good, a case from this District, the court noted the presumption in 1 U.S.C. § 1 that "in determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations."  914 F. Supp. at 1127.  The Good court relied on that statute and several district court decisions in holding that the Westinghouse Electric Corporation qualified as a person within the meaning of the federal officer removal statute.  Id. at 1127-28.

This Court agrees with Good and the majority of federal courts that have decided the question.  It concludes that HGSA qualifies as a person for purposes of the federal officer removal statute.

### C.    "Acting Under" a Federal Officer and "Causal Nexus" Requirements

Although the Third Circuit has articulated the requirement that a defendant have been "acting under" a federal officer as distinct from the need for a causal connection between the conduct in question and the federal direction, Feidt, 153 F.3d at 127, the questions "tend to collapse into a single requirement: that 'the acts that form the basis for the state civil or criminal

9

suit were performed pursuant to an officer's direct orders or to comprehensive and detailed

regulations.'" MTBE, 488 F.3d at 124 (quoting Ryan v. Dow Chem. Co., 781 F. Supp. 934, 946

(E.D.N.Y. 1992)); see also Good, 914 F. Supp. at 1128.

Defendants contend that because HGSA is a Medicare carrier, the corporation and its

employees were "acting under" a federal officer.  (Defs.' Opp'n 5.)  Defendants argue that

"[c]ourts have consistently recognized that suits against Medicare contractors are suits against

individuals operating under the direction of a federal officer because the Secretary is the real

party in interest."  (Id.)  The Court agrees with defendants.

Numerous federal courts have determined that Medicare Part B carriers contracting with

the United States Department of Health and Human Services operate under the direction of a

federal officer.  See, e.g., Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000,

1004 (8th Cir. 1998); Bodimetric Health Services, Inc. v. Aetna Life & Casualty, 903 F.2d 480,

487-88 (7th Cir.), cert. denied, 498 U.S. 1012 (1990); Group Health Inc. v. Blue Cross Ass'n,

793 F.2d 491, 493 (2d Cir. 1986); Peterson v. Blue Cross/Blue Shield of Texas, 508 F.2d 55, 57-

58 (5th Cir.), cert. denied, 422 U.S. 1043 (1975).

In this case, plaintiffs allege that defendants were bound by, yet misapplied, Medicare's

complex rules and regulations in the course of administering claims on behalf of CMS.  See, e.g.,

(Compl. ¶ 75(a)) (alleging failure to advise RMT of the results of HGSA's review of its claims,

as required by 42 CFR § 405.372(c)); (id. ¶ 75(d)) (alleging suspension or revocation of RMT's

provider number, in violation of CMS Ruling 98-1); (id. ¶ 75(e)) (alleeging that HGSA

improperly demanded that RMT complete CMS form 855B before restoring RMT's suspended

or revoked provider number).  In light of defendants' role in administering the Medicare program

and the complexity of the federal regulations under which they operated, the Court concludes that defendants were acting under "comprehensive and detailed regulations," and not "the general auspices of federal direction." See Good, 914 F. Supp. at 1128.  Because plaintiffs' claims are directly related to HGSA's performance as a Medicare carrier, the Court also concludes that "there is a causal nexus between the claims and the conduct performed under color of a federal office." Feidt, 153 F.3d at 127.

**D.      Colorable Claim to Federal Defense**

"Federal officer removal must be predicated on the allegation of a colorable federal defense." Mesa, 489 U.S. at 129; see also Feidt, 153 F.3d at 127.  In construing the colorable federal defense requirement, the Supreme Court has rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (quoting Willingham, 395 U.S. at 407).  The bar for demonstrating a colorable defense is lower than for establishing that a defense warrants dismissal, because the defendant is not required "win his case before he can have it removed." Id.

Defendants' Opposition to Plaintiffs' Motion to Remand specifies two colorable federal defenses applicable to this case: the Medicare Act's limitation on judicial review of claims "arising under" the Medicare Act and official immunity.  (Defs.' Opp'n 6-7.)  For the reasons set forth below in the Court's analysis of Defendants' Motion to Dismiss, both of these defenses apply to plaintiffs' claims and therefore satisfy the "colorable defense" requirement.

For the foregoing reasons, the Court concludes that defendants have satisfied the requirements for removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Thus, Plaintiffs' Motion to Remand is denied.

11

**V.     DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

On July 14, 2004, defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment.  On July 26, 2004, plaintiffs filed a Response to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.  The Court grants Defendants' Motion to Dismiss on the ground that 42 U.S.C. § 405(h) bars the Court from exercising jurisdiction over plaintiffs' claims.

**A.     Standard of Review**

**1.     Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  Plaintiff has the burden of establishing subject matter jurisdiction.  See Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1999).  That is the issue presented by the Motion to Dismiss in this case.  As with a Rule 12(b)(6) motion, a court evaluating a facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

### 2.       Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a

pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised

by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "'accept[s] all

factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff,

and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting

Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  "To survive a motion to

dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative

level . . . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  In

other words, a complaint must contain "enough factual matter (taken as true) to suggest" the

elements of the claims asserted.  Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).

### B.       Jurisdictional Bar in 42 U.S.C. § 405(h)

In drafting the Medicare Act, Congress crafted a detailed procedure for contesting a

Medicare carrier's decisions.  This procedure provides the sole means of review for a Medicare

provider dissatisfied with a carrier's decisions.  See §§ 42 U.S.C. 405(g)-(h), 1395ff, 1395ii.

"Judicial review of claims arising under the Medicare Act is available only after the Secretary

renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g)

for old age and disability claims arising under Title II of the Social Security Act."  Heckler, 466

U.S. at 605.[2]  The Medicare Act and applicable regulations specify the levels of administrative

---

[2] 42 U.S.C. § 405(g) provides in part as follows:

Any individual, after any final decision of the Commissioner of Social Security made
after a hearing to which he was a party, irrespective of the amount in controversy, may

review that a party must exhaust before obtaining a "final decision."  In the context of an appeal

of a Medicare carrier's decision, the Medicare regulations provide, *inter alia*, that:

> If an individual beneficiary is dissatisfied with the initial determination, he or she may request, and the carrier will perform, a review of the claim.  Following the carrier's review determination, the beneficiary may obtain a carrier hearing if the amount remaining in controversy is at least $100 . . . Following the carrier hearing, the beneficiary may obtain a hearing before an ALJ if the amount remaining in controversy is at least $500.  If the beneficiary is dissatisfied with the decision of the ALJ, he or she may request the Departmental Appeals Board (DAB) to review the case.  Following the action of the DAB, the beneficiary may file suit in Federal district court if the amount remaining in controversy is at least $1,000.

42 C.F.R. § 405.801.  Thus, although the Medicare Act permits review of a Medicare carrier's

decisions in district court, such review is only available under § 405(g) after a plaintiff has

satisfied Medicare's administrative exhaustion requirements.  Moreover, such judicial review is

subject to the jurisdictional bar of § 405(h).

Plaintiffs allege that almost all of their Medicare claims have been paid.  For example,

plaintiffs state in the Complaint that a Medicare Hearing Officer reversed HGSA's denials as to

---

> obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia . . . The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions . . . .

seventy-six of ninety-one medical necessity claims, (Compl. ¶ 28), RMT's provider number was restored in a decision "fully favorable" to RMT, (id. ¶ 43), and all denials of claims because of the failure of third-party providers to produce requested records were later reversed by a Medicare Hearing Officer, (id. ¶ 49).  Plaintiffs further allege that their few remaining Medicare claims – such as RMT's administrative appeal contending that the ALJ improperly determined the amount of money that RMT was overpaid by Medicare – are proceeding through Medicare's administrative and judicial review process.  (Pls.' Resp. 16.)  As an example, RMT seeks judicial review in Civil Action No. 05-5670, claiming that it was awarded $120,961.13 less by the ALJ than what it is entitled to under the Medicare regulations.

It is plaintiffs' position that their state law tort claims are unrelated to the pending claims for Medicare benefits and are not subject to Medicare's limitation on judicial review.  (Id.)  In response, defendants argue that "[b]ecause plaintiffs' action for damages involves claims that all 'arise under' the [Medicare Act] or are 'inextricably intertwined' with claims that arise under the Act, these claims must be brought, if at all, as specified by the Act."  (Defs.' Mot. 18.)  The claims implicated in this argument, as presented in plaintiffs' Complaint, arise out of defendants' alleged: (1) failure to provide timely notice of the results of an overpayment investigation; (2) errors in administering RMT's Medicare provider number; (3) improper withholding of payments because of the failure of third-party providers to produce requested records; and (4) refusal to communicate with RMT because of this Court's order in Civil Action No. 01-5227. The Court concludes that all such claims are "inextricably intertwined" with claims for Medicare benefits and are therefore subject to the Medicare Act's limitation on judicial review.

Section § 405(h), which is made applicable to Medicare by 42 U.S.C. § 1395ii, limits judicial review of claims for Medicare benefits.  That statute states:

15

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  The Supreme Court has explained that the first two sentences of the statute "assure that administrative exhaustion will be required.  Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)." Weinberger v. Salfi, 422 U.S. 749, 757 (1975) (citations omitted); see also Midland Psychiatric Assocs., Inc. v. United States, 969 F. Supp. 543, 548 (W.D. Mo. 1997) (holding that the second sentence of § 405(h) "bar[s] second-guessing, reconsideration, or any other type of review except as part of the process Congress established for review of Medicare claims"), aff'd, 145 F.3d 100 (8th Cir. 1998).  The third sentence of the statute "provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." Heckler, 466 U.S. at 614-15; see also Fanning v. United States, 346 F.3d 386, 392 (3d Cir. 2003) (holding that § 405(h) precludes a district court from exercising federal question jurisdiction over any claim "arising under the Medicare Act").

The Supreme Court has interpreted the "arising under" language in § 405(h) broadly. Heckler, 466 U.S. at 615 (citing Weinberger, 422 U.S. at 760-61); see also Fanning, 346 F.3d at 396.  A claim "arises under" the Medicare Act if (1) "both the standing and the substantive basis for the presentation" of the claim is the Act, Heckler, 466 U.S. at 615, or if (2) the claim is "inextricably intertwined" with a claim for medical benefits, id. at 614.  In assessing whether a claim falls into either of these categories, courts "must discount any 'creative pleading' which

16

may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes."  Wilson v. Chestnut Hill Healthcare, No. 99-1468, 2000 WL 204368, *4 (E.D. Pa. Feb. 22, 2000).  A claim does not "arise under" the Medicare Act only in "certain special cases" where a claim is "wholly 'collateral'" to a claim for benefits and the injury suffered could not be remedied by the retroactive payment of benefits after the exhaustion of remedies.  Heckler, 466 U.S. at 618.

In this case, plaintiffs seek to recover consequential damages for expenses and other damages incurred as a result of defendants' alleged misapplication of the Medicare guidelines in the course of administering plaintiffs' claims.  Specifically, plaintiffs assert claims under state law theories of tortious interference with contract, misfeasance, and negligent supervision, alleging that defendants' actions forced them to borrow and expend substantial sums of money and adversely affected RMT's creditworthiness.  Courts have found that such claims are "inextricably intertwined" with claims for benefits.  See Midland, 145 F.3d at 1004 (finding plaintiff's state law tortious interference claim "inextricably intertwined" with a Medicare benefits determination); Bodimetric, 903 F.2d at 487 (holding that plaintiff's state law claims arose under the Medicare Act); Roberts v. Hay, No. 92-0212-M, 1992 WL 206292, at *6 (N.D. Al. June 9, 1992) (same); Neurological Assocs.–H. Hooshmand, M.D., P.A. v. Blue Cross/Blue Shield of Florida, Inc., 632 F. Supp. 1078, 1080-81 (S.D. Fla. 1986) (same); see also Wilson, 2000 WL 204368, at *5 (dismissing without prejudice tortious interference and other state law claims "arising under" the Medicare Act).

In Bodimetric, the plaintiff owner and operator of home health care agencies sought millions of dollars from the defendant Medicare fiscal intermediary under a variety of legal

theories including fraud, negligent misrepresentation, and breach of contract.  903 F.2d at 483.

The Seventh Circuit found that all of the plaintiff's claims arose under the Medicare Act.  Id. at

487.  In so holding, the Bodimetric court stated:

> A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack
> as a claim for collateral damages instead of a challenge to the underlying denial of
> benefits.  If litigants who have been denied benefits could routinely obtain judicial
> review of these decisions by recharacterizing their claims under state and federal
> causes of action, the Medicare Act's goal of limited judicial review for a substantial
> number of claims would be severely undermined.

Id.  Numerous courts have since cited this language in rejecting efforts by Medicare providers to

avoid the limitation on judicial review in § 405(h).  See, e.g., Allstar Care Inc. v. Blue Cross and

Blue Shield of S. Carolina, Corp., 184 F. Supp. 2d 1295, 1300 (S.D. Fla. 2002); Wilson, 2000

WL 204368, at *4; Midland, 969 F. Supp. at 548.

    In a district court case with facts very similar to the instant case, the plaintiff Medicare

provider sued the defendant Medicare carrier's employees on state law grounds for "having

violated mandatory regulations" in the course of administering plaintiffs' claims.  Roberts, 1992

WL 206292, at *1-2.  The Roberts court framed the issue presented as whether "§ 405(h)

precludes a state law tort claim where some of the claimed elements of damages are not available

under the [Medicare] Act."  Id., at *5.  The court relied on Bodimetric in holding that the

plaintiff's state law tort claims arose under the Medicare Act and, therefore, could only be

litigated in district court in accordance with the procedures specified in the Act.  Id., at *6.  The

court concluded that § 405(h) precluded the plaintiff from "augment[ing] his statutory remedies

for wrongful denial of his claims" by framing claims for Medicare benefits as state law tort

claims.  Id.

18

The Court is persuaded by <u>Bodimetric</u> and subsequent cases holding that claims for consequential damages resulting from adverse decisions by Medicare carriers are "inextricably intertwined" with claims for benefits.  In this case, each of plaintiffs' claims deals with defendants' actions in the course of administering plaintiffs' claims for reimbursement or overseeing RMT's performance as a Medicare provider.  Several of plaintiffs' allegations, such as those involving defendants' errors in administering RMT's provider number and improperly withholding payments because of the failure of third-parties to produce medical records, have already been litigated in administrative hearings.  To the extent that plaintiffs' have obtained the relief sought in those proceedings, plaintiffs are limited to that recovery and cannot obtain more than permitted by the Medicare program by couching their claims as state law challenges.  To the extent that plaintiffs are aggrieved by the results of the administrative review process, the proper – and only – recourse available is an appeal of the Secretary's "final decision" in accordance with § 405(g) and the Medicare regulations.  Thus, irrespective of what relief plaintiffs actually obtained in the administrative process, § 405(h) bars judicial review of plaintiffs' state law tort claims, all of which are "inextricably intertwined" with claims for Medicare benefits.

Finally, to the extent that plaintiffs seek damages for claims they have not pursued at all in the administrative process – such as defendants' refusal to communicate with RMT concerning Medicare payments – those claims, which are "inextricably intertwined" with claims for benefits, must be pursued in the first instance through Medicare's administrative review procedures.  This Court cannot consider those claims except as provided in § 405(g) because reviewing the merits of plaintiffs' claims would necessarily require determining whether HGSA and its employees acted in conformity with the Medicare regulations.  Section 405(h) precludes

this Court from conducting that review for claims that were not exhausted in accordance with the Medicare Act.  Midland, 145 F.3d at 1004.

Plaintiffs cite three cases decided since Bodimetric holding that certain state law claims related to Medicare benefits do not "arise under" Medicare.  (Pls.' Resp. 16.)  Two of the cases plaintiffs cite involve death or personal injury claims against private medical insurers or doctors providing care or processing payments for individual beneficiaries.  See Ardary v. Aetna Health Plans of California, Inc., 98 F.3d 496 (9th Cir. 1996) (wrongful death action); Wartenberg v. Aetna U.S. Healthcare, Inc., 2 F. Supp. 2d 273 (E.D.N.Y. 1998) (claims for wrongful death and negligence).  The third case involves a Racketeer Influenced and Corrupt Organizations Act (RICO) civil suit against a Medicare fiscal intermediary alleged to have wrongfully disapproved reimbursement claims in the course of an illegal bribery scheme.  FAC, Inc. v. Cooperativa de Seguros de Vida, 106 F. Supp. 2d 244 (D.P.R. 2000).

The Court concludes that the cases on which plaintiffs rely are factually distinguishable and unpersuasive.  The Ninth Circuit itself distinguished its Ardary decision in a case involving claims by a Medicare provider forced into bankruptcy because of financial hardship resulting from a fiscal intermediary's decisions.  Kaiser v. Blue Cross of California, 347 F.3d 1107, 1114 (9th Cir. 2003).  The Kaiser court explained that "the Ardary analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services."  Id. at 1114.  The Kaiser court's reasoning also applies to the claims in Wartenberg, F. Supp. 2d at 274-75, which involved personal injury claims and not economic injury resulting from a Medicare carrier's payment denials.  Finally, the district court in FAC concluded that it could determine whether plaintiff was harmed without "examin[ing] the claims themselves . . .

20

[because] the mere refusal to participate in a bribery scheme, regardless of the merits of the claims Plaintiff submitted on behalf of its clients, could have caused harm to plaintiffs . . . ." 106 F. Supp. 2d at 252.  In this case, unlike in FAC, the Court could not review plaintiffs' claims without deciding whether defendants complied with the applicable Medicare regulations.

Plaintiffs make several additional arguments as to why § 405(h) should not bar judicial review of its state law tort claims.  First, plaintiffs argue that even if their claims arise under the Medicare Act, § 405(h) does not strip this Court of jurisdiction, because the third sentence of the statute refers only to claims brought under 28 U.S.C. § 1331 or 28 U.S.C. § 1346, and this case was removed pursuant to 28 U.S.C. § 1442(a)(1).

Several courts have applied the jurisdictional bar in § 405(h) in cases removed under § 1442(a)(1).  In Pani, the Second Circuit applied § 405(h) to a claim removed under § 1442(a)(1), noting that Heckler applied to any claim "inextricably intertwined" with benefits determinations under Medicare.  152 F.3d at 76.  The Roberts court also held that § 405(h) "by its terms bars any collateral attack upon a decision to deny a claim."  1992 WL 206292, at *5-6 (citing Heckler, 466 U.S. at 608 n.4); see also Freeze v. Coastal Bend Foot Specialist, No. 06-481, 2006 WL 3487405 (S.D. Tex. Dec. 1, 2006) (noting that a claim removed pursuant to § 1442(a) is subject to Medicare's exhaustion requirement).  The court agrees with these decisions.

"Section 1442(a)(1) is designed to prevent state courts from interfering with the implementation of federal law."  Ryan, 781 F. Supp. at 939.  While the "well-pleaded complaint" rule ordinarily prohibits a federal court from exercising jurisdiction based solely on the assertion of a federal defense, § 1442(a)(1) provides an exception where a federal officer raises a federal

question in his removal petition.  <u>Mesa</u>, 489 U.S. at 136.  Significantly, the federal officer

removal statute does not on its own provide "law capable of supporting Art. III 'arising under'

jurisdiction."  <u>Id.</u> at 136.  Rather, it provides qualified defendants a federal forum in which to

litigate their federal defense.  <u>Id.</u> at 137.

       In this case, one of the federal questions raised in defendants' removal petition is whether

§ 405(h) precludes review of plaintiffs' claims.  (Defs.' Not. of Rem. ¶ 6.)  While § 1442(a)(1)

grants the Court jurisdiction to address that question, it does not provide plaintiffs a basis for

avoiding the Medicare Act's exclusive judicial review procedures.  The Supreme Court has

stated that "Section 405(h) purports to make exclusive the judicial review method set forth in

§ 405(g)," <u>Illinois Council v. Shalala</u>, 529 U.S. 1, 10 (2000), and that "all aspects of [a]

respondent's claim for benefits should be channeled first into the administrative process which

Congress has provided for the determination of claims for benefits," <u>Fanning</u>, 346 F.3d at 395

(quoting <u>Heckler</u>, 466 U.S. at 614); <u>see also</u> <u>St. Vincent's Med. Ctr. v. United States</u>, 32 F.3d

548, 550 (Fed. Cir. 1994) ("Section 405(h) . . . unequivocally provides that 'no action' arising

under the Medicare Act shall be brought in any forum or before any tribunal that is not

specifically provided for in the Medicare Act.").  Creating an exception to this rule for cases

removed to federal court under the federal officer removal statute would undermine "Congress'

carefully crafted scheme for administering the Medicare Act."  <u>Heckler</u>, 466 U.S. at 621.

       Plaintiffs also are mistaken in asserting that "[t]here can be no doubt that if Congress

intended to foreclose <u>any and all</u> federal court jurisdiction for cases arising under the Medicare

Act, it would have spoken in more global terms and not deprived a district court of subject mater

jurisdiction under just (2) specifically identified sections of Title 28."  (Pls.' Resp. 14) (emphasis

22

in original).  The <u>Bodimetric</u> court noted that earlier versions of § 405(h) included nearly every grant of federal jurisdiction.  903 F.2d at 488; <u>see also</u> <u>Weinberger</u>, 422 U.S. at 757 (noting that as originally drafted, § 405(h) applied to all jurisdictional grants in Title 28 except for several "special-purpose" jurisdictional grants).  That court explained that in revising the statute to its present form, Congress made clear that it did not intend to alter the substantive scope of § 405(h).  <u>Bodimetric</u>, 903 F.2d at 489 ("[T]he amendments made by section 2663 [inserting the reference to 28 U.S.C. §§ 1331 and 1346] shall be effective on the date of the enactment of this Act; but none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date." (quoting Pub. L. No. 98-369, 98 Stat. 1162, § 2664(b))).  Thus, contrary to plaintiffs' argument, the reference to 28 U.S.C. §§ 1331 and 1346 in § 405(h) does not establish the intent of Congress to vest federal courts with jurisdiction over any class of claims "arising under" the Medicare Act other than as provided in § 405(g).[3]

Second, plaintiffs argue that even if this Court finds that their state law tort claims "arise under" Medicare, the Supreme Court decision in <u>Bowen v. Michigan Academy of Family Physicians</u>, 467 U.S. 667 (1986), excuses resort to Medicare's administrative and judicial review process where no such review is available under the Medicare Act.  Plaintiffs contend that <u>Bowen</u> applies to its claims because Medicare's administrative procedures do not allow for recovery under state tort law.  In response, defendants take the position that plaintiffs can obtain

_____

[3] Even without this legislative history, the absence of a reference to 28 U.S.C. § 1442(a)(1) in 42 U.S.C. § 405(h) is not evidence that Congress intended the statute to provide plaintiffs a means of avoiding Medicare's jurisdictional bar.  Because § 1442(a)(1) is never available to plaintiffs as a basis for invoking federal jurisdiction, there is no reason that Congress would have specifically made it unavailable to plaintiffs in the Medicare context.

some relief through the Medicare Act's administrative process.  The Court agrees with

defendants.

As in this case, the plaintiff in Bodimetric argued that the court had jurisdiction because

many of the plaintiff's claims could not be administratively appealed.  The court rejected this

argument, stating:

> [T]he underlying allegations concerning Aetna's actions provide a basis for plaintiffs'
> administrative challenges under § 1395ff.  True, the Secretary cannot adjudicate
> plaintiffs' claims under RICO and the common law; yet RICO and the common law
> would simply provide plaintiffs with theories to recover the value of lost benefits and
> consequential damages in a case where the underlying facts could be raised in the
> administrative process.

903 F.2d at 486 (citation omitted).  Other courts have also held that a plaintiff's inability to

recover all desired damages through Medicare's administrative process does not preclude finding

an absence of jurisdiction pursuant to § 405(h).  See, e.g., Kaiser, 347 F.3d at 1112 ("The fact

that [plaintiffs] seek damages beyond the reimbursement payments available under Medicare

does not exclude the possibility that their case arises under Medicare.").

In Illinois Council, the Supreme Court held that Bowen only applies to those cases with

"no review available at all."  Fanning, 346 F.3d at 399 (citing Illinois Council, 529 at 13).  As in

Bodimetric, RMT had the opportunity to "introduc[e] the facts underlying its claims during the

administrative hearings."  Bodimetric, 903 F.2d at 486.  Significantly, plaintiffs allege in their

Complaint that they have already obtained substantial redress through the administrative process.

Thus, even if plaintiffs cannot recover in administrative proceedings under Medicare all

consequential damages related to defendants' administration of their claims, this is not an

instance where "no review [was] available at all" under the Medicare Act.  Accordingly, the

Court rejects plaintiffs' argument that Bowen renders § 405(h) inapplicable to plaintiffs' claims.

24

Finally, plaintiffs argue that even if RMT's claims are barred by the Medicare Act, the individual plaintiffs' claims are not, because only the entity RMT may utilize Medicare's administrative review procedures.  The Court disagrees with plaintiffs.  In <u>Midland</u>, the plaintiff psychiatric services provider argued that it could bring suit outside of Medicare's administrative process because the hospitals with which it had contracted were separately pursuing relief through Medicare's administrative channels.  The district court rejected this argument, explaining that the second sentence of § 405(h) "is not limited to participants [in an administrative proceeding for Medicare benefits], but rather guards the Secretary's decisions from review other than as specifically provided."  969 F. Supp. at 548.  The Court agrees with the <u>Midland</u> court's reasoning and concludes that the individual plaintiffs may not assert claims "arising under" the Medicare Act outside of Medicare's judicial review process.

For the foregoing reasons, the Court concludes that all of plaintiffs' state law tort claims "arise under" the Medicare Act.  None of plaintiffs' claims seek review of a "final decision" of the Secretary as provided in § 405(g).  Thus, the Court lacks jurisdiction to hear this dispute, and Defendants' Motion to Dismiss is granted with respect to all of plaintiffs' claims.  This dismissal is without prejudice to plaintiffs' right to pursue relief through the Medicare Act's administrative process and to appeal any "final decision" of the Secretary to this Court pursuant to § 405(g).[4]

### C.    Official Immunity

Defendants argue that under the official immunity doctrine articulated by the Supreme Court in <u>Westfall v. Erwin</u>, 484 U.S. 292 (1988), they are entitled to absolute immunity from state law tort liability, because plaintiffs' claims arose from actions taken within the scope of

---

[4] The Court notes that RMT's Complaint in Civil Action No. 05-5670 purports to be such an appeal.

defendants' official duties as Medicare carriers and because the actions were discretionary in nature.[5] (Defs.' Mot. 13.) Plaintiffs contend that defendants' actions were non-discretionary and, therefore, that defendants are not entitled to official immunity. Specifically, plaintiffs assert that defendants failed to take actions mandated by the Medicare Act and Medicare regulations, including issuing an overpayment determination letter when their investigation was complete and renewing RMT's provider number when required to do so. (Pls.' Resp. 11-12.) Because the Court concludes that it lacks subject matter jurisdiction over plaintiffs' claims, it declines to rule on whether defendants are entitled to official immunity.[6]

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Remand is denied and Defendants' Motion to Dismiss is granted.

An appropriate order follows.

---

[5] The doctrine of official immunity shields federal officials from state law tort liability where (1) the challenged conduct falls within the scope of the officials' duties and (2) is discretionary in nature. See Westfall v. Erwin, 484 U.S. 292, 300 (1988).

[6] Defendants also argue that the Secretary is the proper defendant in this action and, therefore, that plaintiffs' claims should be dismissed because they have "failed to name and effect service on the proper defendant." (Defs.' Mot. 10.) Defendants cite no authority holding that a case against a Medicare carrier must be dismissed for failure to name the Secretary. In this case, as in others involving Medicare carriers, the Government has entered an appearance and taken over defense of the case. See, e.g., C. Jack Friedman, Ph.D. & Assocs., P.C. v. Pennsylvania Blue Shield, 836 F. Supp. 263, 264 (E.D. Pa. 1993); Neurological Assocs.–H. Hooshmand, M.D., P.A. v. Blue Cross/Blue Shield of Florida, Inc., 632 F. Supp. 1078, 1080 (S.D. Fla. 1986). Accordingly, the Government is already in a position to represent the Secretary's interests, and the Court will not grant relief on the ground that plaintiffs served the improper party.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

―――――――――――――――――――――

| | | |
|---|---|---|
| **REGIONAL MEDICAL TRANSPORT,** | : | **CIVIL ACTION** |
| **INC., ROBERT M.  SKLAR, AND** | : | |
| **SCOTT C.  DONAHUE** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **HIGHMARK, INC., D/B/A** | : | **NO.  04-1969** |
| **HGS ADMINISTRATORS,** | : | |
| **MARGERY L.  GLOVER,** | : | |
| **LAURA L.  MINTER, MIRANDA** | : | |
| **SHAW, STEPHEN M.  WALKER, AND** | : | |
| **KIMBERLY G.  WARREN** | : | |

―――――――――――――――――――――

## O R D E R

     **AND NOW**, this 2nd day of April, 2008, upon consideration of Plaintiffs' Motion to

Remand (Document No. 4, filed June 4, 2004); Defendants' Opposition to Plaintiffs' Motion to

Remand (Document No. 7, filed June 18, 2004); Defendants' Motion to Dismiss or in the

Alternative for Summary Judgment (Document No. 9, filed July 14, 2004); Defendants'

Memorandum of Law in Support of Motion to Dismiss or in the Alternative for Summary

Judgment (Document No. 10, filed July 14, 2004); and Plaintiffs' Response to Defendants'

Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 11, filed July 26,

2004), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

     1.    Plaintiffs' Motion to Remand is **DENIED**;

     2.    Defendants' Motion to Dismiss is **GRANTED** for lack of subject matter

jurisdiction over plaintiffs' state law tort claims, and plaintiffs' Complaint is **DISMISSED**

**WITHOUT PREJUDICE** to plaintiffs' right to pursue relief through the Medicare Act's

administrative process and to appeal any "final decision" of the Secretary to this Court pursuant

to 42 U.S.C. § 405(g).

**BY THE COURT:**


**/s/ Honorable Jan E. DuBois**
         **JAN E. DUBOIS, J.**